Filed 6/25/13  In re Jordan H. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re JORDAN H., a Person Coming Under the Juvenile Court Law. | |
| | D062836 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. NJ014235) |
| v. | ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT] |
| JAMES H. et al., | |
| Defendants and Appellants. | |

THE COURT:

It is ordered that the opinion filed herein on May 30, 2013 be modified as follows:

On page 7, in the first sentence of the second paragraph, the section number is changed from "300" to "388" so the sentence reads:

In addition, section 388 petitions filed on the same day as the permanency plan selection and implementation hearing are disfavored, and the court could have denied the petition on timeliness grounds alone.

There is no change in the judgment.


McCONNELL, P. J.

Filed 5/30/13 (unmodified version)

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re JORDAN H., a Person Coming Under the Juvenile Court Law. | D062836 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. NJ014235) |
| v. | |
| JAMES H. et al., | |
| Defendants and Appellants. | |

APPEALS from orders of the Superior Court of San Diego County, Michael J. Imhoff, Commissioner. Affirmed.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant James H.

Monica Vogelmann, under appointment by the Court of Appeal, for Defendant and Appellant Jennifer H.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Erica R. Cortez, Deputy County Counsel, for Plaintiff and Respondent.

James H. and Jennifer H. appeal orders summarily denying James's petition for modification under Welfare and Institutions Code section 388 (further statutory references are to the Welfare and Institutions Code) and terminating their parental rights to their son, Jordan H., under section 366.26. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Jordan H. was born in January 2010. He spent almost two months in hospital care, withdrawing from severe opiate addiction. His mother, Jennifer, admitted to using drugs while she was pregnant with him. Jordan's father, James, also had a history of drug use and drug-related criminal convictions. Jordan was adjudicated a dependent of the juvenile court. (§ 300, subd. (b).) When Jordan was released from the hospital, he was placed in the care of his paternal grandmother (Grandmother).

Jennifer and James received 24 months of reunification services focused on substance abuse treatment and recovery. At the time of the 24-month review hearing, Jennifer had been arrested on federal charges of human trafficking and state charges of prostitution. She had not had any contact with Jordan for three months. James had not been able to complete his case plan or find stable employment. He had not visited Jordan in more than a month.

On October 11, 2012, the day of the section 366.26 hearing, James filed a section 388 petition asking the court to return Jordan to his care under a plan of family

2

maintenance services or alternatively, to reinstate reunification services, place Jordan in the care of his paternal grandfather and allow James to reside in the home. The court denied the petition, finding that James "has not carried his burden with respect to a change of circumstances even by a preponderance of the evidence." The court further found that even if James had shown a legitimate change of circumstances, he did not carry his burden with respect to Jordan's best interests.

At the section 366.26 hearing, the court admitted the report, including the addendum report, of the San Diego County of Health and Human Services Agency (Agency) in evidence. Jennifer testified by telephone. She expected to be released from custody in four months and asked the court to select a plan of guardianship. Jennifer said she had tried to maintain contact with Jordan while she was incarcerated.

The Agency reported that Jordan was a sweet little boy who was very attached to Grandmother and her two younger children. Grandmother's home was loving and stable. The social worker had discussed different permanency plans with her. Grandmother decided adoption was in Jordan's best interests. In August 2012, Grandmother met with an adoptions worker to start the adoptive home study process. The social worker said if for some reason Grandmother was unable to adopt Jordan, there were 50 families in San Diego County with approved adoptive home studies that were interested in adopting a child like Jordan.

The social worker did not believe that Jordan had a significant relationship with either parent. Jennifer was incarcerated in federal prison and had not seen Jordan in more than nine months. James was able to visit Jordan in Grandmother's home as much as he

3

wanted. On average, James saw Jordan approximately once or twice a month. During the dependency proceedings, there were periods of one to two months in which neither parent visited Jordan.

The court found that Jordan was likely to be adopted within a reasonable time if parental rights were terminated (adoptability finding) and that Jordan did not have a beneficial parent/child relationship with either parent. The court terminated parental rights and designated Grandmother as Jordan's prospective adoptive parent.

On appeal, each parent joins in and adopts the other parent's arguments. (Cal. Rules of Court, rule 8.200(a)(5).)

## DISCUSSION

### A

James and Jennifer contend the court erroneously employed an incorrect standard of proof when it found that "father has not carried his burden with respect to a change of circumstances even by a preponderance of the evidence" and denied an evidentiary hearing on James's section 388 petition (the petition). They ask this court to reverse the orders terminating parental rights and remand the matter for an evidentiary hearing on the petition.

Under section 388, a party may petition the court to change, modify or set aside a previous court order. The petitioning party has the burden of showing, by a preponderance of the evidence, there is a change of circumstances or new evidence, and the proposed modification is in the child's best interests. (§ 388; *In re Jasmon O.* (1994) 8 Cal.4th 398, 415; *In re Amber M.* (2002) 103 Cal.App.4th 681, 685.)

The court must liberally construe the petition in favor of its sufficiency. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309 (*Marilyn H.*); Cal. Rules of Court, rule 5.570(a).) "The parent need only make a prima facie showing to trigger the right to proceed by way of a full hearing." (*Marilyn H.,* at p. 310; *In re Hashem H.* (1996) 45 Cal.App.4th 1791, 1798-1799.) When determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 188-189; see *In re Jamika W.* (1997) 54 Cal.App.4th 1446, 1450-1451.)

We review a summary denial of a hearing on a modification petition for abuse of discretion. (*In re Zachary G* (1999) 77 Cal.App.4th 799, 808 (*Zachary G.*).)

We are not persuaded by the parents' argument the court applied an erroneous burden of proof when it summarily denied the petition. "The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition." (*In re Zachary G., supra*, 77 Cal.App.4th at p. 806.) The court stated it was liberally construing the petition in favor of its sufficiency. In finding that the facts alleged would not sustain a finding of

5

changed circumstances "even by a preponderance of the evidence," the court indicated that the facts were not sufficient to sustain a favorable decision on the petition by the requisite burden of proof. Thus the petition did not state a prima facie case of changed circumstances or the child's best interest. (*Ibid*.)

The court did not abuse its discretion in summarily denying the petition. James alleged his circumstances were changed because he had maintained his sobriety, attended weekly NA meetings, had stable housing and successfully pursued employment opportunities. In addition, James said he had increased his visitation to two times per month, including daytime and overnight visits. James said a modification of the prior order was in Jordan's best interests because Jordan was strongly bonded to him, referred to him as "daddy" and enjoyed their visits.

The court could reasonably determine the alleged facts did not show that James's circumstances were changed and that a modification of the prior order terminating reunification services was in Jordan's best interests. After reunification services have been terminated, the focus shifts to the needs of the child for permanency and stability. (*In re Hashem H., supra*, 45 Cal.App.4th at p. 1800.) James was offered reunification services for 24 months. He did not complete his case plan. The court did not abuse its discretion when it determined a further period of reunification services was not likely to lead to reunification and an extension of time would not be in Jordan's best interests.

The court reasonably determined the petition did not state a prima facie case that James's circumstances were sufficiently changed to assume custody of Jordan and that such a change of placement was in Jordan's best interests. (§ 388, subd. (d).) Jordan had

6

been placed with Grandmother when he was less than two months old.  He was closely bonded to her.  Grandmother had an open door policy with respect to James visiting Jordan.  James visited Jordan for a few days every other month, and there were periods in which James did not visit his son for one or two months.  James alleged he had increased his visitation to "two times per month."  This does not constitute a meaningful change in circumstances as required under section 388.  Further, the court could reasonably conclude that there was not sufficient evidence to show that a change of placement was in Jordan's best interests.

In addition, section 300 petitions filed on the same day as the permanency plan selection and implementation hearing are disfavored, and the court could have denied the petition on timeliness grounds alone.  (See *In re Edward H*. (1996) 43 Cal.App.4th 584, 594.)

B

James and Jennifer contend the court erred when it found that Jordan was likely to be adopted because Grandmother had not initiated an adoptive home study and she had been referred to child protective services on allegations of physical abuse in 2006, which was closed as inconclusive, and on allegations of physical and emotional abuse in 2008, which was closed as unfounded.  The parents argue that Jordan was very attached to Grandmother and she had provided exemplary care to him during his treatment for opiate withdrawal.  If she were unable to adopt Jordan, placement with another adoptive family would be seriously detrimental to him.  The parents contend the court should have deferred an adoptability finding until Grandmother's adoptive home study had been

7

completed and the court could reach a reasonable conclusion that the Agency would approve the home study.

At a section 366.26 hearing, the court may select one of three alternative permanency plans for the dependent child—adoption, guardianship or long-term foster care. (*In re Taya C*. (1991) 2 Cal.App.4th 1, 7.) If the child is adoptable, there is a strong preference for adoption over alternative permanency plans. (*San Diego County Dept. of Social Services v. Superior Court* (1996) 13 Cal.4th 882, 888; *Zachary G., supra*, 77 Cal.App.4th at pp. 808-809.)

A finding of adoptability requires "clear and convincing evidence of the likelihood that adoption will be realized within a reasonable time." (*In re Zeth S.* (2003) 31 Cal.4th 396, 406 (*Zeth S.*); § 366.26, subd. (c)(1).) The question of adoptability usually focuses on whether the child's age, physical condition and emotional health make it difficult to find a person willing to adopt that child. (*In re Sarah M*. (1994) 22 Cal.App.4th 1642, 1649.) If the child is considered generally adoptable, there is no need to examine the suitability of a prospective adoptive home. (*In re Scott M*. (1993) 13 Cal.App.4th 839, 844.) When the child is deemed adoptable based solely on a particular family's willingness to adopt the child, the trial court must determine whether there is a legal impediment to adoption. (*In re Carl R*. (2005) 128 Cal.App.4th 1051, 1061.)

On review, we determine whether the record contains substantial evidence from which a reasonable trier of fact could find clear and convincing evidence that the child was likely to be adopted within a reasonable time. (*In re Gregory A*. (2005) 126 Cal.App.4th 1554, 1561-1562.)

The parents' contention the court should have waited to select a permanency plan for Jordan until it could reasonably determine whether Grandmother's adoptive home study would be approved is not supported legally or factually. Under section 366.26, subdivision (n)(1), the court may designate a current caregiver of the child as a prospective adoptive parent if the child has lived with the caregiver for at least six months, the caregiver currently expresses a commitment to adopt the child, and the caregiver has taken at least one step to facilitate the adoption process. Grandmother clearly met those requirements. Although the Agency's initial section 366.26 report, which was prepared on August 3, 2012, stated that Grandmother had not initiated an adoptive home study, Grandmother met with the adoptions social worker four days later to start the process. In the addendum report, the social worker stated Grandmother and her adult daughter (who lived in the home) were fingerprinted and received criminal clearances. The Agency received three reference letters that were written on her behalf. Further, the court may postpone the selection of a plan of adoption only if the child is difficult to place for adoption and there is no identified or available prospective adoptive parent. (§ 366.26, subd. (c)(3).)

The record shows that Jordan was both generally and specifically adoptable. Although Jordan had a long withdrawal from in utero drug exposure, he was meeting his developmental milestones. He was not difficult to place. Grandmother wanted to adopt him. The child abuse allegations against Grandmother in 2006 and 2008 were not substantiated. There was nothing in her background that had precluded the Agency from safely placing Jordan in her home. He continued to thrive in her care without incident.

9

The social worker also identified 50 approved adoptive families in San Diego that were willing to adopt a child like Jordan. The record contains ample evidence to support the finding that Jordan was likely to be adopted within a reasonable time. (§ 366.26, subd. (c)(1); *Zeth S.*, *supra*, 31 Cal.4th at p. 406; § 366.26, subd. (a).)

C

James and Jennifer contend the court erred when it terminated parental rights because James maintained regular and consistent contact with Jordan and Jordan would benefit from maintaining the parent/child relationship. They argue that while Jordan looks to Grandmother to meet his fundamental needs, he had a unique relationship with his father from whom he gained love and a sense of self-worth.

An exception to termination of parental rights exists when "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) " '[B]enefit from continuing the . . . relationship' " means " 'the [parent/child] relationship' . . . promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575 (*Autumn H.*).) The exception does not require proof the child has a "primary attachment" to the parent or the parent has maintained day-to-day contact with the child. (*In re S.B.* (2008) 164 Cal.App.4th 289, 299 (*S.B.*); *In re Brandon C.* (1999) 71 Cal.App.4th 1530, 1534-1538; *In re Casey D.* (1999) 70 Cal.App.4th 38, 51.)

10

Where the parent has continued to regularly visit and contact the child, and the child has maintained or developed a significant, positive, emotional attachment to the parent, "the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*Autumn H., supra*, 27 Cal.App.4th at p. 575.)

We determine whether there is substantial evidence to support the court's ruling by reviewing the evidence most favorably to the prevailing party and indulging in all legitimate and reasonable inferences to uphold the court's ruling. (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545.) If there is substantial evidence supporting the court's ruling, the reviewing court must affirm the court's rejection of the exceptions to termination of parental rights under section 366.26, subdivision (c). (*Autumn H., supra,* 27 Cal.App.4th at p. 576.)

The record shows that during the reunification period, James did not visit Jordan from August to mid-October 2010. After he resumed visiting his son, he saw him every other Thursday and on Sunday afternoons. By February 2012, James was able to visit Jordan as often as he could and was allowed to stay overnight in Grandmother's home. At the time of the 24-month review hearing in April 2012, James had not visited Jordan in more than a month. During the next six months, James telephoned Grandmother once

11

or twice a month and stayed at her home with Jordan for a few days every other month. The court could reasonably find that James did not maintain regular contact and visitation with his son throughout the dependency proceedings. (§ 366.26, subd. (c)(1)(B)(i).)

The social worker reported that Jordan loved to see his father and James was attentive and playful with him during visits. Despite his love and affection for his son, James did not show much initiative to stabilize his lifestyle or maintain a safe residence during Jordan's lengthy dependency proceedings. James's visitation with Jordan became more sporadic and less frequent as the case progressed. The paternal grandfather said that although James loved his son, he was not responsible enough to be a parent. James continued to have a relationship with Jennifer, who had a history of drug recidivism and prostitution. The social worker said Jordan did not have a significant parent/child relationship with James or Jennifer, and termination of their parental rights would not cause Jordan to suffer serious detriment.

To overcome the strong policy in favor of adoption, the parent must show more than "frequent and loving contact" (*In re Beatrice M*. (1994) 29 Cal.App.4th 1411, 1418) and have a stronger relationship to the child than a friendly relative (*In re Angel B*. (2002) 97 Cal.App.4th 454, 468). The court could reasonably infer the bond between James and Jordan, although affectionate, playful and loving, was not sufficiently strong to outweigh the benefits Jordan would gain from adoption in a permanent, safe and stable home. (*Autumn H.*, *supra*, 27 Cal.App.4th at p. 575.) The record supports the finding that James did not demonstrate the type of dedication to his child that characterizes a beneficial parent/child relationship. (See *S.B., supra*, 164 Cal.App.4th at p. 300 [parent's devotion

12

to his child was constant, as demonstrated by his full compliance with his case plan and consistent visitation].)  There is substantial evidence to support the court's finding that the beneficial parent/child relationship exception did not apply.  (§ 366.26, subd. (c)(1)(B)(i).)

## DISPOSITION

The findings and orders are affirmed.


McINTYRE, J.

WE CONCUR:

McCONNELL, P. J.

AARON, J.

13